STATE OF MISSOURI, RESPONDENT, v. G. C. SUTTERFIELD, APPELLANT.—
176 S. W. (2d) 666.

St. Louis Court of Appeals. Opinion filed January 4, 1944.

*Wm. P. Elmer, J. D. Leffler, C. I. Hoy* and *Elmer R. January* for appellant.

564

*W. E. Coffer*, Prosecuting Attorney for respondent.

HUGHES, P. J.—On June 5, 1940, the prosecuting attorney of St. Francois County filed in the circuit court an information .charging that the defendant, G. C. Sutterfield, on or about the 18th day of September, 1939, did unlawfully, willfully and knowingly cause to be made and delivered by Charles Toppins, and was privy to said making and delivering, of a known false and fraudulent general warranty deed and conveyance, and put the same to use as having been made in good faith, the said Charles Toppins being the grantor and the said G. C. Sutterfield being the grantee, of certain real estate situate in the County of Ste. Genevieve, to-wit: All of the Southeast quarter of the Southwest quarter and the Southwest quarter of the Southeast quarter of Section 15, Township 37, Range 6, containing 80 acres; which real estate was then and there owned by Nancy Ann Faulkner, Major Thurman, Nase Janis, Virgie Moss, Edna Johnson, Pearl Vineyard, Ann Marshall, Harvey Faulkner, Norville Faulkner and Virginia Zatchritz, who had previously inherited the same and in which the said Charles Toppins had no right, title or interest at the time he delivered, made and executed the said deed to the said G. C. Sutterfield, a fact well known at the time to Charles Toppins and G. C. Sutterfield, and that said deed was made, executed and delivered as aforesaid and received by the said G. C. Sutterfield with intent to deprive Nancy Ann Faulkner (and the other alleged owners named above) of said real estate and of beneficial use thereof.

Defendant's motion to quash the information was overruled.

At the trial, Charles Toppins, called as a witness for the State, said that defendant Sutterfield told him that he knew where he could get some land if he had anyone to sign a "free-action" deed; that nobody owned the land; and asked him if he would sign the deed, that it would help him out; that later defendant took him to Farmington where he signed a deed; that he was given no money for signing the deed; that he did not owe anybody at the time he made the deed and did not make it to keep from paying debts and did not make it to defraud or cheat anyone; that he never owned any land anywhere; that he only signed one deed, and that was in the fall of 1939.

Gertrude Banes, testified that on May 12, 1939, Toppins and Sutterfield came to the office of W. N. Flemming in Farmington, where she worked, and at Sutterfield's direction she prepared a deed from Toppins to Sutterfield to land in Ste. Genevieve county, that Sutterfield gave her the description of the land, and after the deed was prepared Toppins signed and acknowledged it. Later, on September 18, 1939, they both returned, and Sutterfield stated he had found an error in the description of the land, and directed her to prepare a deed of correction, which she did, and this deed was signed and acknowledged by Toppins; that she saw no money passed from Sutterfield to Toppins, but Sutterfield paid for her services.

Leo Karl, who is Circuit Clerk and Recorder of Ste. Genevieve County, identified Exhibit 1, which was later received in evidence, as a certified copy of the deed from Toppins to Sutterfield dated September 18, 1939, and purporting to convey the land described in the information for a consideration of $80.

Ray Faulkner testified that sometime in 1940 he left word for Sutterfield to come and see him and he came, "and I told him he had cut the timber off the land and somebody had to pay for it. He said he couldn't pay for it because he only gave $80 for it." Witness said the land he referred to was in Ste. Genevieve County; that he knows where the land described in Exhibit 1 is located; that he was on it in the spring of 1940 and found the timber had been cut off of it.

Emmett Faulkner testified that he was a son of Nancy Ann Faulkner, whose maiden name was Nancy Ann Thurman; that she died in August, 1941; that around the last of August he had a conversation with defendant Sutterfield, in which Sutterfield said, "I will give you $400 if you can get that 'squashed' "; that about three years before that Sutterfield came to him and said he had been directed to him to buy this timber, and he told Sutterfield it belonged to his mother and her sister's children, and Sutterfield said he would go and see his mother; that he told Sutterfield there were more heirs but he didn't know them all; that Sutterfield said he would buy it for $300.

The State rested its case, and defendant offered an instruction in the nature of a demurrer to the evidence, which was refused.

Defendant's evidence was to the effect that the land in question was unfenced until about three years before the trial; that for over thirty years, from about 1903, it was not assessed for taxation and no one paid taxes on it; that Sutterfield deeded the land to Orville L. Ollsman, who cut the timber off of it, and then deeded it to Robert Millman. That at some time (the record does not disclose) Ollsman had a talk with Emmett Faulkner in Farmington; that Ollsman had been sent to Emmett Faulkner by Nancy Ann Faulkner, and Emmett Faulkner sent Ollsman to see Major Thurman who would know more about it than anyone else, that he (Emmett Faulkner) didn't know where the land was. Ollsman went to see Thurman who was nearly ninety years old, and Thurman told him that his father claimed a lot of that land back there and when his father died his mother wanted to homestead all of it and she went to do that and they only allowed her 160 acres, so she dropped this *40* out and homesteaded the 160 acres that laid in a square right northeast of that. Ollsman testified that Sutterfield did not cut any of the timber on that land.

The defendant, G. C. Sutterfield, testified that he obtained a description of the land from a plat in the recorder's office; that he inquired of Toppins where he might find the owner and Toppins said he owned it; that he gave Toppins $80 for a deed to the land on May 12, 1939; later he found a misdescription in that deed, and on September 18, 1939, he had Toppins make him a deed of correction; that he never had a talk with Emmett Faulkner in which he said he would give him $400 if he could get this case "squashed", and that he never had a conversation with Emmett Faulkner at any time. That he did have a talk with Ray Faulkner in which Ray Faulkner said that somebody had cut some of his timber and somebody had to pay for it, and that he said, "If I cut any of your timber, I am sure I would be glad to pay for it;" that he didn't know at that time that there was any question about this particular piece of land, and at that time he was cutting a number of pieces of timber; that he did not know that Ray Faulkner was referring to the Toppins land. He further said that the Toppins deed was not made for the purpose of defrauding any prior or subsequent purchasers of the land from Toppins; that he did not know whether Toppins had ever made a deed to this land before or since the time he got his deed; that he did not know whether Toppins ever owed anybody any debts before or after he got the deed; that he did not put the deed on record or transfer it to Ollsman for the purpose of defrauding any prior or subsequent creditors Toppins may have had, or prior or subsequent purchasers of that land.

Two witnesses testified that the general reputation of the defendant as being an honest, law abiding citizen was good.

568

At the close of all of the evidence defendant again asked an instruction in the nature of a demurrer to the evidence, which was refused. The court instructed the jury, who, after argument of counsel, returned a verdict finding the defendant guilty and assessing a fine of $150. The motion for new trial being overruled, the case comes here on appeal.

We have set out the charge and the facts on which it is based somewhat at length in order that a clear understanding may be had of the case.

The prosecution is under Section 4490, Revised Statutes 1939, which is as follows:

"Every person who, being a party to the sale and delivery of any goods or chattels, or to any conveyance or assignment of any estate or interest in real estate, goods, chattels or things in action, or of any rents or profits issued therefrom, or to any charge upon such estate, interest, rents or profits, made or created with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or other persons, and every person being privy to or knowing of any such conveyance, assignment or charge, who shall willingly put the same in use, as having been made in good faith, shall, upon conviction, be adjudged guilty of a misdemeanor."

This section of the statute was before this court in the case of The State v. Bragg, 63 Mo. App. 22, where it was said that the section creates two offenses: "*First*. The one, a mere fraudulent conveyance for the making of which the grantor is guilty of a misdemeanor. *Second*. A fraudulent conveyance and putting the same in use as made in good faith, which may be done by either or both of the parties. In neither case, however, could a conveyance under this statute be deemed fraudulent, unless it had the elements essential to create a fraudulent conveyance as defined in civil law. One of these is that the possible operation of the conveyance shall be injurious to creditors; for, if it could not prejudice the rights of creditors, the conveyance is not open to attack by them as fraudulent and cannot be annulled on that ground." The Bragg case was a prosecution against the grantor in the deed, and was under the first offense set out in the section, whereas the charge in this case is attempted to be made under the second offense set out in the section, and so the Bragg case is not of much value in this case. Inasmuch as the offense condemned by the latter part of the section is that of putting into operation or effect the fraud condemned in the first part of the section, there could be no case against the grantee without first charging and proving a case against the grantor. The one is dependent upon the other. The second offense in the section is in the nature of a charge against the grantee who acts as an accessory or an accomplice or an abettor to the fraud of the grantor, and of course there could be no accessory or accomplice or abettor without a principal. Toppins, an uneducated

and ignorant man, did not own the land or have any interest in it and did not even know where the land was; he had no creditors that he could defraud; there were and could be no prior or subsequent purchasers of the land from him because he did not own the land and had no interest in it whatever.

If the contention of the State is true, the conduct of this defendant was most reprehensible, but it was in so manner whatever a putting into operation and effect a fraud of the grantor in the deed, and that is what is condemned by the statute. This section was primarily designed to protect the creditors of a landowner from an attempt by him to defeat the collection of their debt by fraudulently conveying his land, or to protect a prior or subsequent purchaser from such landowner making a second conveyance, after having once sold and conveyed his land, and in order to defeat his first conveyance. And then secondarily, to make it an offense for the grantee in such a conveyance, and who was privy to or had knowledge of the fraud, from putting the same to use as having been made in good faith.

A conveyance is the transfer of the title of land from one person to another. And under Section 4490 it is the fraudulent conveyance of title that creates an offense. There is no magical meaning in the word ''conveyance''; it denotes an instrument which carries from one person to another an interest in land. If it does not do this it is not a conveyance. A deed from Toppins of land in which he had no semblance of title or interest, would not carry any title or even create a cloud upon the title of the true owner, much less deprive the true owner of the real estate or of any beneficial use thereof. ''The conveyance of land by the grantor who sets up no title whatever does not cast any cloud over the title of the true owner.'' [Dunklin County v. Clark et al., 51 Mo. 60, 62.] The case of Hannibal & St. Joseph Ry. Co. v. Nortoni, 154 Mo. 142, 55 S. W. 220, was in equity, and the plaintiff sought to cancel a deed made under circumstances very similar to those in this case; the petition alleging that the defendants, knowing that plaintiff owned the land, fraudulently induced one Blake to claim the same, and procured from Blake a warranty deed purporting to convey the lands to them. The trial court sustained a demurrer to the petition, and the Supreme Court upheld the judgment, and in the course of its opinion said, ''The deed from Blake to defendants is clearly void on its face, because Blake had no title whatever to the land, which was apparent from the records of deeds in the recorder's office of the county.''

The contention of the State is that the defendant did not care for the land, but all he wanted was the timber; and, that this case may well be called stealing timber by means of surreptitious and fraudulent deed. That may have been defendant's purpose, but if so this deed could not possibly have aided him in such purpose, because procuring a deed from one who was not the owner and had no interest whatever

in the land, would not convey any right whatsoever to the defendant, or be any defense whatsoever to a prosecution under sections 4541 to 4544, Revised Statutes 1939, for cutting or destroying or taking away or purchasing timber upon lands belonging to someone else, nor would it constitute any defense whatsoever to a civil action for treble damages under section 3681, Revised Statutes 1939, for cutting down or carrying away timber being or growing on the land of any other person.

The offense under section 4490 is that the conveyance be made with intent to defraud prior or subsequent purchasers or to hinder, delay or defraud creditors *or other persons.* The words, *"or other persons"* refer to any other person bearing a similar relationship to the grantor as prior or subsequent purchasers or creditors. The deed under such facts as appear in this case could not convey any right or title of the true owner, and hence could not defraud him in the least. The wrong that was suffered by the true owners of the land was not that condemned by section 4490, but was the wrong condemned by one of sections 4541 to 4543, for which a prosecution would lie; and for which a civil remedy would avail for treble damages under section 3681.

Other questions are presented by appellant such as rulings upon the admission of evidence and as to the giving and refusal of instructions, however, it is unnecessary to rule on those assignments in view of our construction of the meaning and purpose of section 4490, Revised Statutes 1939. The motion to quash the information should have been sustained, or in any event, when the facts were adduced and clearly established that there was no offense under section 4490, the defendant's demurrer should have been given.

For the reasons herein assigned the judgment of the circuit court is ordered reversed, and the defendant discharged. *McCullen* and *Anderson, JJ.,* concur.